**W. C. LEONARD AND COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. EC 6974.

United States District Court,
N. D. Mississippi, E. D.
March 12, 1971.

James P. Knight, Jr., Jackson, Miss., for plaintiff.

H. M. Ray, U. S. Atty., Oxford, Miss., Leonard Van Slyke, Jr., Tax Div., Dept. Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This suit seeks the recovery of United States income taxes paid by plaintiff, a Mississippi corporation with its principal office at Kosciusko, Mississippi, as the result of an assessment following examination of its corporate income tax returns. Plaintiff sues to recover $2,931.17, plus interest, which it alleges was overpaid for the fiscal year July 1, 1965 to June 30, 1966, and $1,947.28, plus interest, which it alleges was overpaid for the fiscal year July 1, 1966 to June 30, 1967. The court's jurisdiction is conferred by 28 U.S.C. § 1346(a).

The sole issue in the case is whether certain amounts of salary bonus and rent expense accrued by plaintiff on its books for its two fiscal years are prohibited as deductions for income tax purposes by 26 U.S.C. § 267(a) (2).[1]

The case, tried to the court without a jury, is submitted for decision upon the pleadings, interrogatories and answers, and stipulated facts. No material fact is disputed.

Plaintiff was an accrual basis taxpayer and was on a fiscal year ending June 30. The income taxes assessed against it were predicated upon disallowance by Internal Revenue Service of the following expenses accrued by plaintiff and deducted on its tax returns:

|  | YEARS ENDED | |
|---|---|---|
|  | June 30, 1966 | June 30, 1967 |
| Officer's salary | 4,000.00 | 4,000.00 |
| Rent expense | 2,105.89 | 1,214.04 |
|  | $6,105.89 | $5,214.04 |

W. C. Leonard, Jr. (Leonard), who was plaintiff's president, and his sister, Mrs. Mary Elizabeth Long (Mrs. Long), owned all of plaintiff's outstanding capital stock during the period at issue. Each was a cash basis taxpayer and reported on the calendar year. The accrued officer's salary and bonus which was disallowed, $4,000 in each year, was payable to Leonard, and Leonard and Mrs. Long each received one-half of the accrued rent, also disallowed.

1. Internal Revenue Code of 1954 (26 U.S.C.):
SEC. 267. Losses, expenses, and interest with respect to transactions between related taxpayers.
(a) *Deductions Disallowed.*—No deduction shall be allowed—
\* \* \* \* \*
(2) *Unpaid expenses and interest.*—In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163,—
(A) *If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not in-*

*cludible in the gross income of the person to whom the payment is to be made;* and
(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and
(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b). (Emphasis added)

The facts underlying each claimed expense may be summarized as follows:

(a) *Officer's salary*:

On May 10, 1966, plaintiff's directors adopted a resolution approving "bonuses to the same people and in the same amounts that were paid last year." The previous year's bonuses totaling $15,825 had been paid to eight persons, including a bonus to Leonard of $8,000, which had been paid to him in two equal installments, one during plaintiff's taxable year ending June 30, 1965, and the other more than two and one half months after the close of plaintiff's taxable year. Shortly after the directors' action of May 10, 1966, an aggregate sum of $15,825 was accrued in plaintiff's Bonus Payable account for the same persons, including an $8,000 bonus for Leonard. On May 20, bonuses of $7,875 were paid, of which $4,000 was received by Leonard. This left a balance in the Bonus Payable account of $7,950. This balance included $4,000 owing to Leonard, which sum was not paid until January 5, 1967. This $4,000 is the first of the officer's salary amounts disallowed by the Commissioner in computing plaintiff's taxable income for the fiscal year ended June 30, 1966.

Practically the same thing occurred for the taxable year ended June 30, 1967. An $8,000 bonus payable to Leonard was accrued on plaintiff's books pursuant to a director's resolution adopted May 10, 1967, reading as follows: "The Board approved the same bonus as last year with the following exceptions: delete the ladies since they are under the wage and hours law, increase Mr. Russell's to $600 payable $250 in May, $250 in December and $100 in January." On June 1, Leonard was paid $4,000 or one-half of the accrued bonus, and he was not paid the remaining $4,000 until January 3, 1968. On June 16, 1967, plaintiff's directors authorized a second bonus that "the president [Leonard] be given a bonus of an additional $5,000 and that Vice Presidents Carnathan and Draper be given raises of $1,400 each, * * * the increases [to] be paid in a lump sum prior to August 31, 1967." Plaintiff made timely disbursements of all sums accrued in the Bonus Payable account except that the account was not cleared until January 3, 1968, as above stated, when the $4,000 payment to Leonard was made. This $4,000 payment represents the second of the accrued officer's salary amounts disallowed in computing taxable income for the taxable year ended June 30, 1967.

Leonard reported the $4,000 bonus payment received on January 5, 1967, in his individual income tax return for the calendar year 1967, and the $4,000 bonus payment received on January 3, 1968, in his individual income tax return for the calendar year 1968.

(b) *Rent expense*:

On February 8, 1955, W. C. Leonard, Sr., the father of Leonard and Mrs. Long, leased to plaintiff the property on which plaintiff's dry goods store is located for a ten-year period expiring December 31, 1964, at an annual rental of 2% of plaintiff's sales, but in no event less than $10,800 payable in monthly installments of $900. The lessor died during the original term of the lease and the real property passed by the laws of descent and distribution of Mississippi to his two children, Leonard and Mrs. Long. In February 1965 Leonard and Mrs. Long renewed the lease contract with plaintiff upon the same rental for an additional ten-year period beginning January 1, 1965.

Pursuant to the above renewal agreement, plaintiff paid $900 monthly to Leonard and Mrs. Long. On June 30, 1966, the close of plaintiff's fiscal year, the annual payment of $10,800 was determined to be less than 2% of plaintiff's annual sales by the amount of $3,458.10; therefore, the company bookkeeper, as of July 1, accrued this sum in the Accrued Rent account in favor of Leonard and Mrs. Long. During the months of November and December plaintiff made certain payments on behalf of Leonard and Mrs. Long, to discharge their obligation as landlord, for building insurance and

taxes, thereby reducing the balance in the Accrued Rent account to $2,105.89. On January 4, 1967, this amount was paid equally to Leonard and Mrs. Long. Plaintiff claimed this amount as a deduction on its tax return for the taxable year ended June 30, 1966, and it was disallowed by Internal Revenue Service. Leonard and Mrs. Long reported their one-half share of this amount in their 1967 individual income tax returns.

At the end of the next corporate taxable year: viz., on June 30, 1967, a balance of $2,578.26 was determined to be the balance payable to Leonard and Mrs. Long as landlord under the lease, and this amount was set up in the Accrued Rent account as of July 1. Following payments of insurance and taxes made for Leonard and Mrs. Long by plaintiff, $1,214.04 remained as a balance in the Accrued Rent account. This latter amount was disallowed as a deduction on the corporate return for the fiscal year ending June 30, 1967, since the amounts of $607.02 each were not paid to Leonard and Mrs. Long until January 3, 1968. Leonard and Mrs. Long reported their one-half share of this income on their 1968 individual income tax returns.

Leonard, as plaintiff's president, was alone authorized to draw checks on plaintiff's bank accounts. Plaintiff's bank accounts were never less in amount than $13,632.57 from July 1, 1966, to the close of business on September 14, 1966, and never less than $22,685.79 from July 1, 1967, to the close of business on September 14, 1967. Also, plaintiff had an unused line of credit up to $25,000 at a local bank at any time within two and one-half months following the close of each fiscal year.

Plaintiff contends that the Commissioner's disallowance of the deductions was improper because of the absence of an essential element of nondeductibility under § 267: viz, that the payments were constructively received by Leonard and Mrs. Long within two and one-half months after the close of each taxable year, and this constructive receipt constituted a timely payment even though the actual checks to pay the expenses were not issued until after the expiration of the two and one-half month period. Plaintiff urges that the doctrine of constructive receipt applies here because the undisputed evidence shows that the items in question were payable as soon as they were accrued and without any substantial limitation or restriction. While acknowledging that the doctrine of constructive receipt now exists in determining the conditions for § 267—nondeductibility, the government denies that it is applicable to this case for two reasons: (1) Leonard and Mrs. Long did not report the income in their individual returns until the year subsequent to the year of accrual by plaintiff, and (2) plaintiff's policy, as reflected by its past practice of installment payments, constituted a substantial limitation on the recipients' right to withdraw the amounts in the year of their accrual or within two and one-half months following its close. For reasons that follow, we disagree with defendant's contentions and uphold plaintiff's right to recover.

The purpose of § 267, under well-established decisions, is "to eliminate the former tax avoidance practice of accruing unpaid expenses and interest payable to a closely related taxpayer who, because he is on a cash basis, reports no income. Because of the relationship between the taxpayers, payment might never be required or might be postponed until the related taxpayer has offsetting losses." Young Door Co. v. Commissioner, 40 T. C. 890, 893 (1963); Geiger & Peters, Inc. v. Commissioner, 27 T.C. 911 (1957); Platt Trailer Co. v. Commissioner, 23 T.C. 1065 (1955), S.Rept.No.1242, and House Ways and Means Committee Rpt. 1546, 75th Congress, 1st Session (1937), p. 29. For a deduction to be barred by this section all conditions therein set forth must exist. Geigers & Peters, Inc., supra; Platt Trailers, Inc., supra; P. G. Lake, Inc. v. Commissioner of Internal Revenue, 148 F.2d 898 (5 Cir. 1945). Prior to the Technical Changes Act of 1953, the doctrine of constructive receipt was not relevant in determining

conditions of nondeductibility. Otherwise stated, unless a payment of expense had been actually made within the two and one-half month period, it failed to qualify as a deduction in the year of accrual. *P. G. Lake,* supra; cf. Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 53 S.Ct. 337, 77 L.Ed. 739 (1933); Fincher Motors, Inc. v. Commissioner of Internal Revenue, 43 B.T.A. 673 (1941).[2]

As the government concedes, the Technical Changes Act of 1953, 67 Stat. 615, adopted August 15, 1953, which added to the first condition of nondeductibility the critical words "and the amount thereof is not includible in the gross income of the person to whom the payment is to be made", (Fn. 1) expressly recognized that constructive, as well as actual, payment might qualify for deductibility. Hence, appropriate Treasury regulations, pursuant to § 267 and other pertinent sections, have been adopted, as set forth with particularity in the margin.[3] It is abundantly clear that the Technical Changes Act of 1953, amending § 24(c) (1) of the 1939 Code,[4] was enacted for the express purpose of eliminating unintended hardships between related tax-

---

2. *Fincher Motors,* supra, flatly declared (p. 676): "Constructive payment is a fiction applied only under unusual circumstances not existing here." (former § 24(c)).

3. Current regulations on income tax: Reg. 1.267(a)–1, (b) (1) (iii):

No deduction shall be allowed a taxpayer for trade or business expenses otherwise deductible under section 162, for expenses for production of income otherwise deductible under section 212, or for interest otherwise deductible under section 163—

\*     \*     \*     \*     \*

If, within the taxpayer's taxable year within which such items are accrued by the taxpayer and 2½ months after the close thereof, the amount of such items is not paid *and* the amount of such items is *not otherwise (under the rules of constructive receipt) includible in the gross income of the payee.* (Emphasis added) . Reg. 1.451–2(a):

\* \* \* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. \* \* \*

4. The purposes of the amendatory Act are clearly set forth in the report of House Commission on Ways and Means and Senate Committee on Finance (H. Rep.No.894, 83rd Congress, 1st Session; S.Rep.No.685, 83rd Congress, 1st Session, as follows:
Section 202.  Deduction of certain unpaid expenses and interest.

In the case of certain closely related taxpayers, such as a corporation and a shareholder owning more than 50 percent of the corporation's stock, section 24(c) of the Code operates to disallow deduction of certain expenses and interest if the following conditions are met:

(1) The amount is not paid within the taxable year or within 2½ months after the close thereof; *and*

(2) Under the recipient's method of accounting the amount is not, unless paid, includible in his income in the taxable year in which, or with which, the taxable year of the payor corporation ends.

This provision is intended to insure that transactions between such related taxpayers do not operate to shift items of income or deductions. A situation has been called to the attention of your committee, however, where section 24(c) may work an undue hardship. For example, a recipient on the cash basis may have an amount credited to his account and made available to him by the corporate payor within 2½ months after the close of the payor's taxable year *so that the recipient must include it in income as an item constructively received in the taxable year so credited. If, however, the corporate taxpayer fails actually to pay over such amount within the period of 2½ months, the item will not be allowed to the corporation as a deduction.* Your committee believes that such a case should not fall within the ban of section 24(c) and the bill so provides by an appropriate amendment of requirement (1) above. \* \* \* (Emphasis added)

payers and to prevent the disallowance of a deduction for expenses if the amount is includible in the gross income of the payee within the taxable year of the payor or within two and one-half months following the close of such taxable year. Since the amendment added by the Technical Changes Act of 1953 did not alter the requirement that all stated conditions must be present for nondeductibility, the taxpayer, to prevail, "need only establish that one or more of the conditions are not present." Geiger & Peters, Inc., supra. Illustrative of the change effectuated by the amendment is McKee v. Commissioner of Internal Revenue, 18 T.C. 512 (1952), where the Tax Court held that constructive payment did not qualify under § 24(c). On the basis of the 1953 amendment enacted soon after rendition of this decision, the Court of Appeals reversed. McKee v. Commissioner of Internal Revenue, 207 F.2d 780 (8 Cir. 1953).

Responding to the government's first argument, we hold that the failure of Leonard and Mrs. Long to include the payments in their individual tax returns until the year subsequent to plaintiff's accrual is no valid basis for denying the deduction. By its terms, the statute is satisfied if the amount is "not includible" in the payee's income; it is irrelevant that the amount is not included in the recipient's reported income in the year accrued. As plaintiff's counsel correctly observes, the court is concerned only with the income tax liability of the corporate payor, and not the individual payees; and if the latter incorrectly report an item of income, the government's remedy is against them and not plaintiff. The question is whether the recipients did constructively receive payment within the two and one-half month period and not what they believed when they reported the income. It would be contrary to the purpose and provisions of § 267 to allow recipients to determine when payments become includible income.

The proper concept of "includibility" was enunciated in Miller v. Commissioner of Internal Revenue, 7 T.C. 729 (1946), reversed in part on other grounds, 3 Cir., 164 F.2d 268.[5] In a pre-1953 amendment decision, the Tax Court ruled that a constructive payment could not qualify for deduction even though the payee had actually included the item in his reported income for the same year in which the corporate taxpayer accrued the amount as an expense on its books. Directly in point is the Tax Court's holding (p. 739):

"The fact that Miller included such compensation in his income tax return for 1940 does not affect the merits of the controversy before us. Within the meaning of section 24(c), deductibility by petitioner of the item in question is not determinable by what Miller may or may not have done in respect of reporting such item for income tax purposes. The application of section 24(c) (2) depends solely upon whether the item sought to be deducted by petitioner was includible for tax purposes in Miller's income for the year of its deduction."

Akron Welding & Spring Co. v. Commissioner, 10 T.C. 715 (1948), relied upon by the government, does not give "includible" a different meaning. In *Akron*, another case decided prior to the 1953 amendment and thus ruling out constructive payment, the court treated the taxpayer's execution and delivery of its promissory notes as equivalent to actual payment which the recipients reported in their tax returns for 1941, the same year the expense was accrued, and upheld the deduction. The Court stated (p. 721):

"In view of our conclusion that the issuance of the notes constituted payment to the officers, it is obvious that they should have reported in their income tax returns for 1941 (as they did) the amounts represented by the

---

5. The Court of Appeals disagreed only with the Tax Court's holding that the giving of taxpayer's promissory notes did

not constitute actual payment of the claimed expense.

notes and should have paid the tax thereon, thus rendering them 'includible' in the individual returns, as required under the statute in order to make section 24(c) (2) inapplicable to the petitioner's disbursements."

Equally without merit is the government's second contention that the doctrine of constructive receipt should not apply because of plaintiff's past practice of paying the amounts, especially bonuses to Leonard, in two installments in different taxable years. Granting that constructive receipt is a doctrine to be "sparingly applied", we agree there is no constructive receipt "where the income is not unqualifiedly subject to the [recipient's] demand and his failure to receive it is not the result of his own choice." *Young Door Co.*, supra. Income is constructively received by a recipient, however, "when it is credited to his account or set apart for him so that he may draw upon it at any time without substantial limitation or restriction." Ibid. Income Tax Regs. 1.451-2(a) (Fn. 3). The quoted resolutions of plaintiff's directors reflect no uniform policy in the mode of paying salary bonuses; the resolutions which were adopted annually in May are clear and unambiguous, and contain no restrictions as to time of payment of the bonus for Leonard as president. In certain instances the directors provided for time restrictions, as in the case of another recipient, Mr. Russell, specific installments payable on deferred dates were provided; and in June 1967 they ordered the additional bonuses to be paid "in a lump sum prior to August 31, 1967." Certainly, the manner in which checks were issued by plaintiff does not disclose an established custom indicating a tacit understanding that the recipients did not have the unqualified right to payment at any time.

As the undisputed facts show, we find that there were no restrictions whatever placed by plaintiff upon the recipients' withdrawal of the expense items accrued to them. The liability for payment of the expense items was created by action of the Board of Directors authorizing such payment; the accounts were immediately accrued on the company's books as payable expenses; funds were available to pay such expense items at any time within two and one-half months following the close of each fiscal year. At no time was plaintiff handicapped by the lack of funds or borrowing capacity to pay its accrued expenses. Finally, since Leonard, one of the recipients, could at any time write checks on the company bank account without countersignature, there was nothing to prevent him from making payment at any time to himself and his sister. As pointed out in O. H. Kruse Grain & Milling Co. v. Commissioner, P–H Memo T.C. ¶ 59, 110 (1959), affirmed on other grounds, 279 F.2d 123 (9 Cir. 1960), "When we treat the accrued rent account in the ledger as being an accrued obligation owing to O. H. Kruse, who was, in effect, in sole control of the corporation, it must be admitted the accruals were subject to his 'unqualified demand.' "

Our conclusion is not in conflict with Hyland v. Commissioner of Internal Revenue, 175 F.2d 422 (2 Cir. 1949), relied upon by the government, since in this case Leonard, the dominant stockholder, had actual authority to draw checks on the firm's bank account, corporate resolutions had been adopted authorizing the bonus payments to him, book entries were made showing his entitlement to the bonus, sufficient funds were in the bank at all relevant times from which the bonus payments could have been made, and his bonus was for past services and not related to the performance of an uncompleted contract. Considering the combination of these uncontradicted facts, the court concludes that all elements of constructive receipt clearly appear. Therefore, plaintiff is entitled to the deductions claimed on its corporate tax returns for the years in issue.

In accordance with the stipulation of the parties, the Internal Revenue Service is directed to make the necessary recomputations allowing plaintiff its full recovery with interest and, within twenty days from this date, the parties shall

present judgment to the court for entry. Should the parties be unable to reach an agreement concerning the amount of the judgment, the difference will be submitted to the court for resolution.